Jack CASEY, Appellant,

v.

CITY OF FAIRBANKS, Appellee.

No. 6181.

Supreme Court of Alaska.

Oct. 7, 1983.

Michelle V. Minor, Anchorage, for appellant.

Dennis E. Cook and Charles D. Silvey, Jr., Merdes, Schaible, Staley & DeLisio, Inc., Fairbanks, for appellee.

Before BURKE, C.J., RABINOWITZ, MATTHEWS and COMPTON, JJ., and DIMOND, Senior Justice.*

* Dimond, Senior Justice, sitting by assignment made pursuant to article IV, section 11, of the

## OPINION

DIMOND, Senior Justice.

This appeal concerns the question of whether appellant, Jack Casey, is entitled to bring a direct action for wrongful discharge against his former employer, appellee City of Fairbanks ("the City"). The superior court granted the City's motion for summary judgment. We reverse.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Casey was hired by the City of Fairbanks as an electrical and building inspector. Pursuant to the collective bargaining agreement subsequently entered into by the City of Fairbanks and the Fairbanks Joint Crafts Council ("the Working Agreement"), Casey was required to and did become a member of the Teamster's Union Local 959 ("the Union"). The Working Agreement provided a five-step grievance procedure for handling employee grievances.[1]

Casey was fired by the City on July 12, 1978. He initially discussed his termination with his shop steward,[2] and later reported his grievance directly to the Union business agent. Casey, however, was informed by the Union business agent that there was nothing he or the Union could do to help him get his job back.

In August 1979, Casey filed suit against the City for wrongful discharge. Specifically, Casey alleged that in carrying out his duties it became necessary for him to refuse to follow his superior's orders because they were in direct violation of the law. Casey sought damages in the amount of $46,000 for lost wages, pension benefits, medical insurance, and other fringe benefits.

On September 6, 1979, the City filed its answer, which it later amended. The City maintained that Casey was precluded from bringing a suit directly against the City because of his failure to exhaust the contractual remedies for employee grievances provided in the Working Agreement. The City then moved for judgment on the pleadings, and the court granted summary judgment in its favor.[3]

On appeal, Casey argues that he followed the grievance procedure to the best of his ability, but that the available contractual remedies proved to be inadequate and futile. Casey asserts that he had no recourse other than to file suit directly against the City when the Union failed to pursue his grievance, because the Working Agreement did not contain any measures by which an aggrieved employee could ensure enforcement of the grievance procedure.

■ The City contends that Casey not only failed to pursue his contractual reme-

Constitution of Alaska.

1. Section 4.1 of the Working Agreement provides:

Any grievance which may arise between the Union or any of its members and the City with respect to wages, hours or other conditions of employment, or with respect to the interpretation or application of any of the terms of this Agreement shall be determined by the following procedure:
Step 1—Employee to Shop Steward
Step 2—Shop Steward to Supervisor
Step 3—Shop Steward and Supervisor to Superintendent or Division Head (Whatever appropriate)
Step 4—Shop Steward, Supervisor and Superintendent (or Division Head)
Step 5—Union Business Agent to City Manager
Any grievance not settled within the first [four] (4) steps must be reduced to writing and filed by the Union and the City within

fifteen (15) days after the grievance arises. Any grievance not so filed shall be deemed to have been waived and shall not be entitled to further consideration. Should the Union Business Agent and the City Manager fail to reach an agreement of a grievance within five (5) days, arbitration shall be resorted to as provided for herein, provided it is lawful. Unless mutually agreed, arbitration shall commence within thirty (30) days.

2. It is unclear, based on the record, whether Casey's initial discussion with his shop steward was for the purpose of initiating grievance proceedings, or to express his belief that his steward was largely responsible for his termination.

3. Because matters outside the pleadings were presented, the court treated the motion for judgment on the pleadings as a motion for summary judgment. Alaska R.Civ.P. 12(c); *Martin v. Mears,* 602 P.2d 421, 425–426 (Alaska 1979).

dies, but also waived his grievance by failing to submit it in writing. The City argues that Casey cannot be excused from exhausting his contractual remedies because he has failed to show that the Union breached its duty of fair representation. This showing is required by federal labor law before an employee is allowed to bypass the remedies specified in the collective bargaining agreement and proceed directly against his employer in court. *Hines v. Anchor Motor Freight, Inc.,* 424 U.S. 554, 563–67, 96 S.Ct. 1048, 1055–58, 47 L.Ed.2d 231, 241–43 (1976); *Vaca v. Sipes,* 386 U.S. 171, 184–86, 87 S.Ct. 903, 913–15, 17 L.Ed.2d 842, 854–55 (1967).

Summary judgment is proper only when no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law. Alaska R.Civ.P. 56(c); *Nizinski v. Golden Valley Electric Association,* 509 P.2d 280, 283 (Alaska 1973). In reviewing a summary judgment, all reasonable inferences must be drawn against the movant and in favor of the non-moving party. *Williams v. Municipality of Anchorage,* 633 P.2d 248, 250 (Alaska 1981); *Wilson v. Pollet,* 416 P.2d 381, 384 (Alaska 1966). Thus, the party seeking summary judgment "has the entire burden of proving that his opponent's case has no merit." *Nizinski,* 509 P.2d at 283, *quoting Braund, Inc. v. White,* 486 P.2d 50, 54 n. 5 (Alaska 1971). For the reasons set forth below, we find that genuine issues of material fact exist in this case and that the City has not met its burden of proving that Casey's claim has no merit.

## II. EXHAUSTION OF CONTRACTUAL REMEDIES

 As we have previously indicated, an employee must first exhaust his contrac-tual or administrative remedies, or show that he was excused from doing so, before he may pursue a direct judicial action against his employer. *Eidelson v. Archer,* 645 P.2d 171, 176 (Alaska 1982); *International Brotherhood of Teamsters, Local 959 v. King,* 572 P.2d 1168, 1172 n. 9 (Alaska 1977); *Holderby v. International Union of Operating Engineers, Local Union No. 12,* 291 P.2d 463, 466 (Cal.1955). Based on a review of the evidence presented, we cannot agree with the superior court that, as a matter of law, Casey has failed without excuse to utilize the grievance procedure set forth in the Working Agreement. To the contrary, we hold as a matter of law that Casey made a good faith effort to pursue his grievance and any further action by him was excused because it would have been futile.

Prior to the determination of this case by the superior court, the City served Casey with a set of interrogatories requesting him to state in detail all actions he had taken to pursue his grievance in compliance with section 4.1 of the Working Agreement. Casey's answers to the interrogatories, along with the two affidavits submitted by the City,[4] constitute the sole evidence of Casey's efforts to exhaust the grievance procedure.

Although Casey's answers to the interrogatories are not clearly articulated, we believe that they adequately establish a good faith effort by Casey to comply with the provisions of the Working Agreement. In response to one interrogatory, Casey related his contacts with his shop steward, Nancy DeLeon, regarding his grievance. At a minimum, Casey's response indicates that his steward was aware of his grievance, and of the likelihood that Casey wanted it pursued.[5]

---

4. Affidavits of Billy J. Culpepper, the City's designee to handle and resolve grievances, and Charles M. Gibson, the City Attorney, were filed to established that no arbitration had been requested by the Union on Casey's behalf. These affidavits have minimal value because they merely confirm the undisputed fact that no written grievances were ever filed with the City on Casey's behalf.

5. Casey stated:

I told the Shop Steward, Nancy DeLeon, that she and other City employees in the Building Department were following me in the days immediately prior to my termination. I feel that she was largely responsible for securing my ultimate termination in July 1978. When I returned to the Building Department after my termination, neither she nor any other workers would talk with me.

Casey further stated that, following his termination, he reported his grievance directly to the Union business agent, Tim Sanderson. Mr. Sanderson informed him that there was nothing he could do to get his job back, nor could the Union help him. Knowing that Mr. Sanderson was the person responsible for representing him and protecting his interests under the Union contract, Casey stated that he did not know what else he could do after being informed that the Union would not pursue his grievance.

In addition, Casey discussed his grievance with his immediate supervisor, Dale Woody, and the head of the Building Department, Robert Hardin. Casey stated that after he was terminated, Hardin and DeLeon (the shop steward) made it clear to him that "going through the [U]nion would result in nothing." Furthermore, Woody and the other people whom Casey believed were responsible for his termination by the City refused to have anything to do with him after his termination. Based on the evidence presented, we conclude as a matter of law that Casey made a good faith effort to pursue his grievance. Any further action that Casey could have taken was excused because it would have been futile.

### III. WAIVER OF GRIEVANCE

Section 4.1 of the Working Agreement provides in relevant part as follows:

Any grievance not settled within the first [four] (4) steps must be reduced to writing and filed by the Union and the City within fifteen (15) days after the grievance arises. Any grievance not so filed shall be deemed to have been waived and shall not be entitled to further consideration.

The City contends that this provision was "inartfully drafted." According to the City, the provision actually means that the employee must reduce his grievance to writing and file it *with* the Union and the City if the grievance is not settled within the first four informal steps of the specified procedure. Therefore, the City argues, Casey's failure to submit his grievance in writing constituted a waiver of any grievance he may have had.

■ · We reject this contention because we conclude that the City's position is based on an erroneous interpretation of section 4.1. We believe that the language in this section means that once a grievance has been channeled through steps 1, 2, 3 and 4, the Union has the responsibility of reducing it to writing and filing it *with* the City within fifteen days. Despite the City's assertion, we find nothing on the face of the Working Agreement that requires or even allows an employee to unilaterally file a written grievance with the Union and the City. Instead, it appears that the employee's responsibility, at least with regard to the grievance procedure, stops once the employee has reported his grievance to the shop steward, as required by Step 1.

As Casey points out, under the terms of the Working Agreement, the shop steward deals directly with a representative of the City at each step of the grievance procedure. If this informal procedure is unsuccessful (i.e., the shop steward, as a representative of the Union, has not been able to resolve the grievance with either the supervisor, superintendent or department head) the Union business agent may file a written grievance with the City Manager (Step 5).

To interpret section 4.1 as the City suggests would require an employee, already presumably represented by the Union shop steward and the Union business agent, to take his grievance directly to the City Manager. This procedure would be inconsistent with section 4.1, as well as with the remainder of the Working Agreement. It would require an employee to negotiate directly with the City, when the very purpose of the agreement is to provide employees with union representation.

■ In essence, the City has asked this court to amend the language requiring a written grievance to be filed *by* the Union to read that it be filed *with* the Union. The affidavits submitted by the City in support of its motion for summary judgment imply, however, that City employees also under-

stood that a written grievance would be submitted by the Union business agent, and not by the employee, to the City Manager.[6] We conclude, therefore, that Casey was under no obligation to file a written grievance with either his Union or the City.

## IV. THE EMPLOYEE'S BURDEN OF PROOF

■ Federal labor law requires an employee to show that his union breached its duty to represent him fairly in the grievance procedures provided under a collective bargaining agreement before the employee may directly sue his employer in court for wrongful discharge. *Vaca v. Sipes*, 386 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d 842 (1976). The Labor Management Relations Act, upon which this rule is based, expressly exempts state and municipal government employers from coverage.[7] Thus, Casey's suit against the City of Fairbanks falls outside the scope of federal law.

■ We are unable to adopt the federal rule in this state because it is inconsistent with our conclusion that persons who are employed other than "at will," *see Breeden v. City of Nome*, 628 P.2d 924, 926 (Alaska 1981), have a sufficient property interest in continuing their employment, absent just cause for their removal, to require that they be given notice and an opportunity to be heard under the due process clause of the Alaska Constitution (art. I, § 7) before their employment is terminated. *See Gorham v. City of Kansas City*, 590 P.2d 1051 (Kan.1979); *State ex rel. Sweikert v. Briare*, 588 P.2d 542 (Nev.1978). *See also University of Alaska v. Chauvin*, 521 P.2d 1234 (Alaska 1974); *Simpson v. Western Graphics Corp.*, 643 P.2d 1276 (Or.1982).

■ Section 4.6 of the Working Agreement states that "[i]n cases where it is determined [that] an employee has been discharged unjustly and without cause, the [Arbitration] Committee shall order the City to return the employee to his position without loss of seniority or pay." Casey accordingly was not an "at-will" employee, but could be terminated only for "cause." Casey alleges that he was terminated because he refused to comply with illegal instructions. The Union refused to process his grievance and, under the Working Agreement, there is no other means by which Casey's claim can proceed to arbitration. If the *Vaca* rule were applied, Casey would be deprived of any review of the decision to terminate him unless he were able to prove that the Union acted wrongfully in refusing to process his grievance; i.e., its decision was "arbitrary, discriminatory or in bad faith." *Vaca v. Sipes*, 386 U.S. at 190, 87 S.Ct. at 916, 17 L.Ed.2d at 857. Although the evidence suggests the contrary, it is possible that the Union's decision was erroneous without being arbitrary, discriminatory or in bad faith. To deny Casey a hearing on his termination except upon proof that the Union's conduct was wrongful places too great a burden upon Casey's right to due process.

■ Because the Working Agreement does not permit Casey to unilaterally initiate arbitration proceedings, Casey's due process rights can be satisfied only by permitting Casey to maintain an independent action against the City of Fairbanks for breach of contract. Compelling the Union to process Casey's grievance would not provide a satisfactory remedy to Casey because there is no reason to believe that the Union, which has shown itself to be recalcitrant

---

6. The affidavit of Billy J. Culpepper, the City's designee to handle and resolve grievances, states: "[A]fter the termination of Mr. John E. Casey, I never received any written notice of any grievance filed by the union business agent on behalf of Mr. Casey." It appears then, that Mr. Culpepper also understood that if a grievance were not resolved by the informal procedures set out in Steps 1–4, a written grievance would be filed "by the union business agent on behalf of Casey."

7. "The term employer ... shall not include ... any State or political subdivision thereof ...." 29 U.S.C. § 152(2) (1982). This provision has been held to exclude cities from the Act. *Police Dep't of Chicago v. Mosley*, 408 U.S. 92, 102 n. 9, 92 S.Ct. 2286, 2294 n. 9, 33 L.Ed.2d 212, 220–21 n. 9 (1972); *City of Alcoa v. Int'l Bhd. of Elec. Workers, Local Union 760*, 308 S.W.2d 476 (Tenn.1957).

toward Casey's claim, would adequately represent his interest. Furthermore, Casey cannot simply avail himself of the Working Agreement's arbitration procedure without the Union's involvement. This is because the Working Agreement specifies that the arbitrators will be selected by the employer choosing one, the Union choosing another, and those two choosing the third. The employer's representative can be expected to be hostile to Casey's claim. Under the circumstances of this case, the Union's representative can be expected to be equally hostile, due to the Union's decision not to process Casey's grievance. Thus, all three arbitrators would at least give the appearance of being biased against Casey.

We recognize that there are legitimate reasons why an employer may prefer that employees grievances be resolved by arbitration, rather than by judicial review. Arbitration provides both a speedier and a less expensive means of resolving the disputes.[8] We note that the City of Fairbanks has recently amended its personnel ordinance to specifically permit non-union employees to process their own grievances through arbitration. Fairbanks Personnel Ordinance No. 3786, § 2.523(H) (1979). The City is free to negotiate an amendment to its Working Agreement to similarly permit union employees to process their grievances through arbitration when their Union refuses to do so. Until and unless this is done, however, employees such as Casey must be permitted to seek judicial review of the decision to terminate them if their Union refuses to process their grievance.

REVERSED and REMANDED for further proceedings consistent with this opinion.

---

8. See Bd. of Educ. v. Ewig, 609 P.2d 10 (Alaska 1980); Anchorage Medical & Surgical Clinic v. James, 555 P.2d 1320 (Alaska 1976); Univ. of Alaska v. Modern Constr., Inc., 522 P.2d 1132 (Alaska 1974); Nizinski v. Golden Valley Elec. Ass'n, 509 P.2d 280 (Alaska 1973).