ANCHORAGE POLICE DEPARTMENT EMPLOYEES ASSOCIATION, Petitioner,

v.

Eric "Frank" FEICHTINGER and Jacqueline A. Feichtinger, individually and as natural parents and next friends of M.F. and K.F., minors, Respondents.

No. S–8069.

Supreme Court of Alaska.

Dec. 30, 1999.

13. See Kollodge v. State, 757 P.2d 1024, 1026 (Alaska 1988).

14. Id. (quoting Jenkins v. Daniels, 751 P.2d 19, 22 (Alaska 1988)).

15. Id.

Mauri Long and Kristen D. Pettersen, Dillon & Findley, P.C., Anchorage, for Petitioner.

Edgar Paul Boyko, Edgar Paul Boyko and Associates, and S. Brent Thompson, Law Office of S. Brent Thompson, Anchorage, for Respondents.

Before MATTHEWS, Chief Justice, COMPTON, EASTAUGH, FABE, and BRYNER, Justices.

## OPINION

EASTAUGH, Justice.

## I. *INTRODUCTION*

■ A municipal employee sued his union for breach of the union's duty of fair representation because it refused to represent him in an arbitration in which he unsuccessfully challenged his termination. The superior court denied the union's motion for summary judgment, and the union now petitions for review of that denial. We hold that if a union's breach of its duty of fair representation seriously undermines the integrity of the arbitral process, the arbitration decision may lose its preclusive effect. We conclude that a genuine issue of material fact exists as to whether any union breach seriously undermined the integrity of the arbitral process in this case. We therefore affirm the denial of the union's summary judgment motion.

## II. *FACTS AND PROCEEDINGS*

This petition for review arises out of the termination of Eric "Frank" Feichtinger's employment with the Anchorage Police Department. In October 1988 the department arrested Feichtinger and the state brought criminal charges against him. Based on an internal investigation into Feichtinger's alleged criminal conduct, the department terminated him.

Feichtinger had been a member of the Anchorage Police Department Employees' Association (the union) since joining the department. The collective bargaining agreement (CBA) between the Municipality of Anchorage and the union permitted the municipality to discharge an employee for just cause. Feichtinger filed a grievance within a month of his termination. He alleged that the department had terminated him without just cause, and sought reinstatement and back pay. After extensively debating the grievance's merits, the union elected not to accept the grievance for referral to arbitration. Feichtinger asked the union to reconsider its decision, but it declined to do so.

The CBA authorized an employee to proceed to arbitration without union representation if the union refused to accept the grievance. Feichtinger chose to go to arbitration. He and the department agreed that the arbitration would await the resolution of his criminal charges.

A jury acquitted Feichtinger on all criminal charges in January 1990. Following Feichtinger's acquittal, the union's executive board met to reconsider its earlier decision regarding Feichtinger's grievance. It decided not to change its decision.

Arbitration then began. At the start of the arbitration hearing, Feichtinger asked that the proceedings be postponed "until such time as he would be able to bring legal action against the [union] for ... the financial resources to hire an attorney." The arbitrator denied Feichtinger's request, noting that arbitration is less formal than a court proceeding and that non-lawyers often represent themselves well in arbitration. The arbitrator also told Feichtinger that he could stay and observe the hearing, but that once he left the hearing or declined to participate he could not participate further. Feichtinger left the hearing and did not return.

At the end of the hearing, the arbitrator accepted a pro se brief from Feichtinger

containing argument and some motions. Nonetheless, the arbitrator determined that the department had terminated Feichtinger for just cause.

Although the CBA provided that the decision of the arbitrator was to be "binding upon all parties thereto," Feichtinger sued the union, the department, the municipality, the state, arbitrator Eaton Conant, and four other individuals (Kevin O'Leary, Joseph Austin, Thomas Walker, and Dwayne McConnell). He asserted several causes of action; the claims relevant to the case before us are the wrongful discharge claim against the municipality and the breach of the duty of fair representation claim against the union.

The superior court granted summary judgment to the arbitrator and dismissed all claims against him on grounds of arbitral immunity. We affirmed that decision in *Feichtinger v. Conant*.[1]

The municipality, the department, O'Leary, Austin, and Walker also successfully moved for summary judgment, relying on res judicata and collateral estoppel. The superior court separately granted summary judgment to the state and McConnell.

The union, however, was unsuccessful in its attempts to obtain summary judgment. Its initial motion for summary judgment argued that it owed Feichtinger no duty of fair representation, and that, even if it owed him that duty, it had satisfied that duty and no genuine issue of material fact existed. The superior court denied the union's motion, apparently finding genuine issues of material fact about whether the union breached its duty.

The union's second motion for summary judgment relied on the preclusive effect of the arbitration decision, and argued that Feichtinger could not recover from the union unless he showed that the department wrongfully discharged him. The superior court issued a proposed order denying the union's second motion for summary judgment and sua sponte reversing its previous rulings on the other defendants' summary judgment motions. The proposed order explained that, while reviewing federal cases, "[t]he court became aware of authorities holding that a breach of the Union's duty of fair representation may trump the effect *res judicata* and collateral estoppel have on precluding relitigation, with respect to both the Union and the employer." The court invited the parties to submit supplemental briefs and proposed orders before it entered a final order. Following briefing, the superior court denied the union's second motion for summary judgment and reaffirmed its earlier orders granting summary judgment to the other defendants.

The union filed a petition in this court seeking review of the denial of its second summary judgment motion. At the same time, Feichtinger appealed the grant of summary judgment to the non-union defendants. We granted the union's petition for review to consider whether Feichtinger should be "collaterally estopped from relitigating his wrongful termination claim against the Union," and if so, whether "denial of summary judgment for the Union [was] improper." We denied the union's request that we decide whether Feichtinger had raised "a material issue of fact in support of his claim that the Union breached its duty of fair representation."

After we granted the union's petition, Feichtinger and the non-union defendants agreed to dismiss Feichtinger's appeal with prejudice. This opinion therefore concerns only the union's petition for review.

### III. *DISCUSSION*

#### A. *Standard of Review*

 Summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show that there is no genuine issue as to any material fact and that any party is entitled to judgment as a matter of law."[2] We review the grant or denial of summary judgment de novo.[3] We resolve

1. 893 P.2d 1266, 1268 (Alaska 1995).

2. Alaska R. Civ. P. 56(c).

3. *See Langdon v. Champion*, 752 P.2d 999, 1001 (Alaska 1988).

questions of law raised by the summary judgment motion by adopting "the rule of law that is most persuasive in light of precedent, reason, and policy."[4]

## B. *When Can an Arbitration Decision Be Deprived of Its Preclusive Effect?*

Collective bargaining agreements generally contain procedures for the settlement of disputes through mutual discussion and arbitration. "[T]he grievance machinery under a collective bargaining agreement is at the very heart of the system of industrial self-government.... The processing of disputes through grievance machinery is actually a vehicle by which meaning and content are given to the collective bargaining agreement."[5] As a result, the federal courts generally give effect to the dispute resolution procedures to which a union and an employer have agreed; judicial review of arbitration awards is exceedingly narrow.[6] Employees must exhaust their contractual remedies and they are bound by the results of the agreement's dispute resolution procedures.[7]

■ Nonetheless, the federal courts have created an exception to the general rule of finality, allowing relitigation of those decisions when the employee proves: (1) that the discharge was erroneous; and (2) that the union's breach of its duty of fair representation seriously undermined the arbitral process.[8] If the employee satisfies these two requirements, the employee is entitled to an appropriate remedy against the employer[9] and the union.[10]

*Hines v. Anchor Motor Freight*[11] illustrates this exception to the general rule of finality. The employees in *Hines* had been discharged for seeking "reimbursement for motel expenses in excess of the actual charges sustained by them."[12] Their union carried their grievance to arbitration, and the arbitration committee ruled in the employer's favor.[13] When evidence later surfaced indicating that the motel clerk was in fact the culprit, the employees sued their employer and their union.[14] In addition to asserting a wrongful discharge claim against their employer, the employees claimed that their union "had made no effort to ascertain the truth of the charges, and that the Union had violated its duty of fair representation by arbitrarily and in bad faith depriving [them] of their employment and permitting their discharge without sufficient proof."[15]

The Supreme Court concluded that the employees could prevail in their hybrid suit if they proved an erroneous discharge and if they proved that the union's breach of duty tainted the arbitration decision.[16] The Court reasoned, "Congress has put its blessing on private dispute settlement arrangements provided in collective agreements, but it was anticipated, we are sure, that the contractual machinery would operate within some mini-

---

4. *Guin v. Ha*, 591 P.2d 1281, 1284 n. 6 (Alaska 1979).

5. *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 581, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960).

6. *See, e.g., United Paperworkers Int'l Union v. Misco Inc.*, 484 U.S. 29, 36–37, 108 S.Ct. 364, 98 L.Ed.2d 286 (1987) (reviewing arbitral reinstatement of employee accused of smoking marijuana at work); *United Steelworkers of Am. v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 596, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960) (reviewing arbitral reinstatement of sympathy strikers).

7. *See DelCostello v. International Bhd. of Teamsters*, 462 U.S. 151, 163–64, 103 S.Ct. 2281, 76 L.Ed.2d 476 (1983).

8. *See Hines v. Anchor Motor Freight, Inc.*, 424 U.S. 554, 570–72, 96 S.Ct. 1048, 47 L.Ed.2d 231 (1976).

9. A union's breach of its duty of fair representation to the employee does not shield the employer from liability. Having initiated the charges against the employee and having wrongfully terminated the employee, the employer precipitated the dispute through its own acts.

10. *See Hines*, 424 U.S. at 568, 96 S.Ct. 1048.

11. 424 U.S. 554, 96 S.Ct. 1048, 47 L.Ed.2d 231 (1976).

12. *Id.* at 556, 96 S.Ct. 1048.

13. *See id.* at 557–58, 96 S.Ct. 1048.

14. *See id.* at 558, 96 S.Ct. 1048.

15. *Id.*

16. *See Hines*, 424 U.S. at 572, 96 S.Ct. 1048.

mum levels of integrity." [17] If the union's misconduct caused a "fundamental [ ] malfunction" [18] in the arbitration, the arbitration decision need not stand, "for in that event error and injustice of the grossest sort would multiply." [19]

Federal law does not necessarily govern this case. The Labor Management Relation Act (LMRA), which governs disputes involving the interpretation of collective bargaining agreements,[20] expressly exempts state and municipal government employers from coverage.[21] But because federal law in this area is well-developed and we have applied federal law in cases in which the state was the employer,[22] we choose to look to federal law in this case, subject to the exception we applied in *Casey v. City of Fairbanks*.[23] We choose to look to federal authorities because we conclude that they have appropriately resolved the conflict inherent here. That conflict arises out of the tension between the desire for arbitral finality and the plight of union members whose unions have undermined the integrity of the arbitral process. In our view, existing Alaska law does not preclude our choice. And today's case deals not with a claim that a union was merely negligent in representing the employee, but that a union altogether failed to represent him.

In applying this rule, we recognize at the outset that its two requirements may overlap at times. Sometimes, but not always, a union's breach may so seriously undermine the integrity of the arbitration process that an erroneous decision is made.[24] Moreover, employees are not entitled to relitigate their terminations merely because they offer newly discovered exculpatory evidence.[25] An erroneous decision is not necessarily proof that the union breached its duty or that the breach seriously undermined the arbitral process.[26]

The union argues that Feichtinger cannot show that the arbitration decision was erroneous because he dismissed his case against his employer. Therefore, the union contends that it is entitled to summary judgment as a matter of law.

We disagree. The federal courts do not require that the employer be joined in a lawsuit against a union for a breach of the duty of fair representation.[27] "The employee may, if he chooses, sue one defendant and not the other; but the case he must prove is the same whether he sues one, the other or both." [28] If Feichtinger successfully proves his allegations against the union, the absence of his employer from his suit will only affect his ability to recover damages flowing from his alleged wrongful discharge.[29] The union

---

17. *Id.* at 571, 96 S.Ct. 1048.

18. *Id.* at 569, 96 S.Ct. 1048.

19. *Id.* at 571, 96 S.Ct. 1048.

20. *See Local 174, Teamsters v. Lucas Flour Co.,* 369 U.S. 95, 102, 82 S.Ct. 571, 7 L.Ed.2d 593 (1962); *Textile Workers Union of Am. v. Lincoln Mills of Ala.,* 353 U.S. 448, 456–57, 77 S.Ct. 912, 1 L.Ed.2d 972 (1957).

21. *See* 29 U.S.C. § 152(2) ("The term 'employer' . . . shall not include . . . any State or political subdivision thereof . . . ."); *see also Casey v. City of Fairbanks,* 670 P.2d 1133, 1138 (Alaska 1983) (concluding that city employee's suit against city "falls outside the scope of federal law").

22. *See, e.g., Kollodge v. State,* 757 P.2d 1028, 1034 (Alaska 1988) (discussing dismissal of Alaska Department of Labor employee).

23. 670 P.2d 1133, 1138 (Alaska 1983) (declining to adopt federal rule requiring employee to show breach of union's duty of fair representation before suing employer for wrongful discharge when CBA prohibits employee from initiating arbitration proceedings without union involvement).

24. *See Wilson v. Municipality of Anchorage,* 977 P.2d 713, 719 (Alaska 1999) (stating that "[a] union's mere negligence does not rise to the level of a breach of the duty of fair representation").

25. *See Hines,* 424 U.S. at 571, 96 S.Ct. 1048.

26. *See Vaca v. Sipes,* 386 U.S. 171, 195, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967) (noting that "breach of the duty of fair representation is not established merely by proof that the underlying grievance was meritorious").

27. *See DelCostello,* 462 U.S. at 165, 103 S.Ct. 2281.

28. *Id.*

29. *See Czosek v. O'Mara,* 397 U.S. 25, 28–29, 90 S.Ct. 770, 25 L.Ed.2d 21 (1970) (holding that

is not entitled to summary judgment as a matter of law on this basis.

C. *Assuming the Union Breached Its Duty of Fair Representation, a Genuine Issue of Material Fact Exists Regarding Whether the Breach Seriously Undermined the Integrity of the Arbitration.*

■ The union also argues that it deserves summary judgment because Feichtinger "failed to make any showing that the breach seriously undermined the arbitral process, even assuming the Union breached its duty of fair representation." [30] Feichtinger disputes the union's argument. Before addressing the merits of this issue, we note that we are following the lead of the federal courts by permitting resolution of this issue on summary judgment. [31]

■ To withstand a union's motion for summary judgment on the question of whether a union's breach seriously undermined the integrity of the arbitral process, an employee must present some evidence of the nature of the breach and how the arbitration outcome might have been different absent the breach. [32] *Hines* provides a good example of a successful claim. The employees, who were accused of overstating the expenses they incurred at a motel, insisted that they were innocent and that their union did not investigate their case thoroughly. [33] The employees alleged that, with minimal investigation, the union would have uncovered evidence suggesting that the motel clerk was at fault; if the arbitrator had considered that evidence, the arbitration result might well have been different. [34]

■ In this case, the union argues that its failure to represent Feichtinger did not affect the outcome of the arbitration because the CBA permitted him to arbitrate alone or with his own attorney. We disagree. First, the union's argument suggests that if a CBA allows employees to go to arbitration without union representation, a union's decision not to arbitrate could never undermine the arbitral process seriously enough to sustain a hybrid suit. We decline to hold that the employee's contractual right to grieve without union assistance necessarily establishes, as a matter of law, that the union's breach did not undermine the arbitral process.

Second, to establish that the arbitral process was seriously undermined, Feichtinger does not rely only on the fact that it was difficult to arbitrate alone. He also argues that in this case the lack of union representation was fatal. His case involved special facts—e.g., publicity, resource imbalance, and access to information—that made assistance of counsel and the union crucial to preserving the integrity of the process.

employees may sue union for breach of duty of fair representation without joining employer, but that union is liable only for damages flowing from its own conduct).

**30.** The superior court found that a genuine issue of material fact precluded summary judgment on the question whether the union breached its duty of fair representation; we denied the union's petition for review on that issue. Therefore, we assume for purposes of discussion that the union breached its duty.

**31.** *See, e.g., Del Casal v. Eastern Airlines, Inc.,* 634 F.2d 295, 297–300 (5th Cir.1981) (affirming district court grant of summary judgment to employer on employee's wrongful discharge claim because union's breach of its duty of fair representation did not seriously undermine integrity of arbitral process); *Vance v. Lobdell–Emery Mfg. Co.,* 932 F.Supp. 1130, 1137–39 (S.D.Ind.1996) (granting union summary judgment); *cf. Hardee v. North Carolina Allstate Serv., Inc.,* 537 F.2d 1255, 1259 (4th Cir.1976) (finding insufficient

evidence to support jury verdict that arbitration proceeding was tainted by union's breach).

**32.** *See, e.g., Taylor v. Ford Motor Co.,* 866 F.2d 895, 898–99 (6th Cir.1989) (holding that union's breach did not seriously undermine arbitral process because "the witnesses who the plaintiffs contend should have testified would not have helped their case"); *Wood v. International Bhd. of Teamsters,* 807 F.2d 493, 501 (6th Cir.1986) ("Plaintiffs' independent attorneys insured that plaintiffs' interests were fairly represented. Any breach by the Union of its duty of fair representation therefore could not have tainted the decision of the arbitrator."); *Vance,* 932 F.Supp. at 1137–39 (granting the union summary judgment because employee "present[ed] no argument or evidence" indicating how alleged breaches would have affected arbitrator's findings on underlying discharge).

**33.** *See Hines,* 424 U.S. at 558, 96 S.Ct. 1048.

**34.** *See id.*

Feichtinger alleges that he faced "political and personal animosity" during the arbitration process. In an affidavit supporting his opposition to summary judgment, he suggested that he stood at an immediate disadvantage because his criminal case had been widely publicized and because rumors about him were rampant. Feichtinger stated that he was financially unable to retain counsel to give him substantive assistance in the arbitration. He also claimed that his lack of legal training left him at a severe disadvantage during arbitration, because he was unfamiliar with the case law cited by the municipality. Finally, he affied that without counsel or union assistance he was unable to produce the evidence necessary to counter the municipality's case.

Given the negative publicity surrounding his case, union representation might have been critical to lend credibility to the substance of his grievance. Although Feichtinger filed a pro se brief with the arbitrator, it is questionable whether he was able to present his position fully without actually participating in the hearing. He apparently thought that the hearing would "extend for another week, and he had wanted to respond to the Municipality's case during that second hearing week."

Viewing the evidence in Feichtinger's favor and giving him the benefit of permissible inferences, he has at least raised a factual dispute about whether his lack of counsel, resources, time, and legal expertise kept him from presenting his case and undermined the arbitral process.

For these reasons, we conclude that there is a genuine issue of material fact regarding whether any breach of the union's duty of fair representation seriously undermined the arbitral process. Summary judgment on this issue was not appropriate.

D. *How Are Damages Against the Union to Be Measured?*

Assuming that Feichtinger makes the requisite showing on remand so as to deprive the arbitration decision of its preclusive effect, he will be entitled to seek damages. We briefly address this issue given the possibility that it will become ripe on remand, and given the union's implicit argument that the dismissal or settlement of Feichtinger's claims against his employer prevents him from showing what damages the union may owe.

In employee hybrid suits for wrongful discharge and breach of a union's duty of fair representation, the federal courts apportion damages between the employer and union according to the damages caused by each defendant.[35] Federal law does not control this case.[36] But the union urges us to look to the federal standard of assessing damages. Feichtinger, on the other hand, argues that we should follow the attorney malpractice model for damages. Under this standard, as Feichtinger describes it, a union that breaches its duty of fair representation becomes liable for all damages the employee suffers, including those flowing from the employee's wrongful discharge.

■■ We reject the attorney malpractice model of damage assessment for unfair representation cases ·and hold that in hybrid suits we will follow the federal model of apportioning damages as set out in *Vaca v. Sipes*[37] and subsequent federal cases.

In *Vaca*, the Supreme Court squarely rejected the imposition of joint and several liability upon a union for its breach of its duty of fair representation.[38] Rather, it required courts to apportion damages between

---

35. *See Vaca*, 386 U.S. at 197, 87 S.Ct. 903.

36. *See supra* note 21.

37. 386 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967).

38. *See id.* at 196–97, 87 S.Ct. 903. *But see id.* at 197 n. 18, 87 S.Ct. 903 (observing that joint and several liability may be appropriate when "the union has affirmatively caused the employer to commit the alleged breach of contract"); *Allen v.*

*Allied Plant Maintenance Co. of Tenn.*, 881 F.2d 291, 298–99 (6th Cir.1989) (applying rule of joint and several liability because evidence indicated that employer and union colluded to effect firing of employee and prevented him from receiving impartial arbitration); *Baskin v. Hawley*, 807 F.2d 1120, 1132–33 (2d Cir.1986) (applying joint and several liability where union participated in underlying wrong of employer).

an employer and union based on fault.[39] The Supreme Court explained that an award against a union that includes damages attributable only to the employer would impose too great a hardship on the union, even if the union had a right of indemnification against the employer.[40] Although only the employer is responsible for back-pay following a wrongful discharge, subsequent federal decisions have made it clear that the union is responsible for any increases in damages, including lost wages, caused by the union's breach.[41]

The federal courts have not agreed upon a precise method of apportionment. Two models currently exist. One bases apportionment on the hypothetical date upon which the employee would have been reinstated had the union fulfilled its duty of fair representation.[42] The employer is liable for losses incurred before that date; the union is liable for losses incurred after that date.[43] The other model apportions damages on a percentage basis, similar to comparative fault.[44]

We need not decide now which of the two federal models Alaska should follow. Because the superior court has not yet had an opportunity to consider whether one is particularly appropriate to these facts and because the parties' briefs do not squarely address this question, we do not address this issue and await an appeal directly presenting it to us.

### E. Even If the Arbitration Award Has Preclusive Effect, Feichtinger May Recover Damages from the Union.

The union contends that if a discharge is for just cause or if the merits of the discharge cannot be reexamined, a union cannot be liable for breach of the duty of fair representation because the employee has not been injured. The union correctly notes that some case law supports this position.[45] But contrary authority also exists; it indicates that an employee may recover some damages (usually attorney's fees) from the union even absent a wrongful discharge.[46]

An example of this latter line of authority is Del Casal v. Eastern Airlines, Inc.[47] A pilot there sought to set aside the arbitration decision upholding his discharge by suing his employer for wrongful discharge and the pilots' union for breach of the duty of fair representation.[48] He claimed that the union refused to represent him because he was not a union member.[49] Although the Fifth Circuit found no justification for setting aside the arbitration decision in favor of the employer,[50] it held that the union breached its duty of fair representation by discriminatorily refusing to represent the pilot in arbitra-

39. See Vaca, 386 U.S. at 196–98, 87 S.Ct. 903.

40. See id. at 197, 87 S.Ct. 903; see also International Bhd. of Elec. Workers v. Foust, 442 U.S. 42, 50, 99 S.Ct. 2121, 60 L.Ed.2d 698 (1979).

41. See Bowen v. United States Postal Serv., 459 U.S. 212, 223–24, 103 S.Ct. 588, 74 L.Ed.2d 402 (1983).

42. See id. at 230 n. 19, 103 S.Ct. 588; Bowen v. United States Postal Serv., 470 F.Supp. 1127, 1129–31 (W.D.Va.1979).

43. See Bowen, 470 F.Supp. at 1129–31.

44. See Aguinaga v. United Food & Commercial Workers Int'l, 993 F.2d 1463, 1475–77 (10th Cir. 1993), aff'g 720 F.Supp. 862, 869–70 (D.Kan. 1989).

45. See, e.g., DiPinto v. Sperling, 9 F.3d 2, 4 (1st Cir.1993); Wood, 807 F.2d at 502; Jordan v. Washington Metro. Area Transit Auth., 548 A.2d 792, 797 (D.C.App.1988).

46. See, e.g., Czosek, 397 U.S. at 28–30, 90 S.Ct. 770 (implying availability of damages independent of merits of employee's wrongful discharge claim); Dutrisac v. Caterpillar Tractor Co., 749 F.2d 1270, 1274–76 (9th Cir.1983) (affirming damage award of attorney fees against union for breach of duty of fair representation, despite finding no wrongful discharge, because union's failure to represent employee fairly in arbitration forced him to hire lawyer); Self v. Drivers, Chauffeurs, Warehousemen & Helpers Local Union No. 61, 620 F.2d 439, 441, 444 (4th Cir.1980) (finding no wrongful discharge but holding union liable for expenses incurred by employees as result of union's failure to properly press grievance against employer).

47. 634 F.2d 295 (5th Cir.1981).

48. See id. at 297.

49. See id. at 300.

50. See id.

tion.[51] It stated that "[w]hile [the union] has the authority to decide under what conditions an attorney will be supplied to a grievant, the fact that the grievant is not a member of the union can play no part in that decision."[52] The Fifth Circuit further reasoned that even if the arbitration award was untainted by the breach (because the pilot hired his own counsel) the pilot still "suffered loss in the form of fees to be paid to his privately retained attorney."[53] It therefore affirmed the jury's award of $35,000 in damages (the pilot's attorney's fees) for the union's breach, despite the fact that the arbitration decision was not relitigated or set aside.[54]

Additional support for this view is found in Justice Stevens's concurring opinion in *United Parcel Service, Inc. v. Mitchell*,[55] where he explained that the two claims are "closely related" but "conceptually distinct":[56]

> The fact that the underlying discharge may not have violated the collective-bargaining agreement does not necessarily absolve the union of liability for its breach, although it may limit the size of the employee's recovery against the union. Thus, while a court considering an employee's claim against a union will evaluate the validity of the employer's underlying conduct, that evaluation is not central to the resolution of the duty-of-fair-representation claim.[57]

■ We choose to follow those federal courts that reason that, even if the arbitration decision upholding an employee's discharge has preclusive effect, it does not necessarily bar the employee's suit against the union. A union is liable to the employee for damages flowing from its breach of the duty of fair representation. In most such cases, the employee's damages will be limited to attorney's fees and costs expended in the arbitration process.

51. *See id.* at 301.

52. *Del Casal,* 634 F.2d at 301.

53. *Id.*

54. *See id.* at 301–02.

Applying this rule here may result in de minimus damages because Feichtinger did not retain an attorney to represent him in the arbitration. Nonetheless, Feichtinger should have an opportunity to seek recoverable damages.

## IV. CONCLUSION

The denial of the union's summary judgment motion is AFFIRMED. We REMAND for further proceedings consistent with this opinion.

MATTHEWS, Chief Justice, dissenting.

### I.

May an employee who loses an arbitration against his employer and then sues his employer and his union claiming union breach of duty re-try against the employer the issue which has already been arbitrated? The majority answers "yes" because this is permitted under federal labor law. My answer is "no" because this is contrary to Alaska law, inconsistent with the adversary system, one-sided, and needlessly interferes with arbitral finality.

### II.

In the superior court the union argued that because the arbitrator had found that the municipality had just cause to fire Feichtinger, the union could not have breached its duty of fair representation. The union contended that it was therefore entitled to summary judgment. The superior court properly rejected this argument, noting that the union's breach of its duty of fair representation might have caused Feichtinger to lose the arbitration and, therefore, the arbitration decision should not have preclusive effect on Feichtinger's claim against the union. The trial court observed:

55. 451 U.S. 56, 101 S.Ct. 1559, 67 L.Ed.2d 732 (1981).

56. *Id.* at 72–73, 101 S.Ct. 1559 (Stevens, J., concurring in the judgment and dissenting in part).

57. *Id.* at 73 n. 4, 101 S.Ct. 1559; *see also id.* at 72–74, 101 S.Ct. 1559.

If the Union's theory of law is adopted only employees who were successful at arbitration could pursue a duty of fair representation claim. This would result in "the tail wagging the dog" and effectively neuter the duty of fair representation.

Today's opinion affirms this aspect of the trial court's decision. To the extent that it does so, I agree with it.

But the real effect of today's opinion is not found in this unexceptional holding. The opinion goes on to rule that when an employee such as Feichtinger claims that the union has breached its duty of fair representation with respect to an arbitration, not only does the arbitration decision not have preclusive effect with respect to the union, it also is not binding with respect to the employee's claim against the employer. Moreover, in its discussion concerning apportionment of damages, today's opinion states that an employee who has lost at arbitration can never be made whole by simply proceeding against the union.[1] I disagree with these rulings. Their effect will be to eliminate the finality of arbitration decisions favorable to employers and create incentives to relitigate the merits of such decisions. This means that an employer, having won at arbitration, must again defend the same claim when the employee charges that the employee was badly represented by the union.

Judge Link decided that the arbitration decision in this case would have a preclusive effect with respect to the municipality. It is this aspect of the decision below with which today's opinion takes issue. As Feichtinger's appeal from the final judgment dismissing his claims against the municipality has now been dismissed with prejudice by stipulation, the question of whether union breach should result in vacating an arbitration award in favor of an employer is no longer squarely before us. Rather than rule on this issue in this discretionary proceeding, it would be better, it seems to me, to wait until it comes before the court in a case in which the interests of an employer are presented for consideration. But since the court has ruled that

an employer does not get the benefit of arbitral finality where a claim of union breach is made, I feel constrained to express my disagreement on the merits.

### III.

I begin with Judge Link's well-reasoned decision. Judge Link wrote:

> The pivotal case in federal duty of fair representation cases is *Vaca v. Sipes,* 386 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967), in which the court held that a union has the duty to represent the interests of all the members, including those who oppose union membership. A breach of this duty occurs whenever:
>
> > [the] union's conduct toward a member of the collective bargaining unit is arbitrary, discriminatory, or in bad faith. *Id.* at 190 [101 S.Ct. 1559].[2]

[2] In the majority of duty of fair representation cases, the alleged misconduct has been based upon allegations of racial discrimination. In the early 1900's, discrimination within the unions based upon race and national origin were quite common. The rule requiring unions to fairly represent all members was originally established to combat this problem.

> In *Vaca* the Court held that where a union has failed to adequately represent its members in grievances with their employer, the employer cannot be allowed to hide behind the flawed arbitration decision. In essence, in cases in which unions violate their duties of fair representation, the arbitration decisions are rendered void, and become subject to collateral attack. *See also, Casey v. City of Fairbanks,* 670 P.2d 1133 (Alaska 1983).
>
> Feichtinger cites these cases for the proposition that res judicata and collateral estoppel cannot bar his civil suit against the remaining defendants because he has alleged a violation of the duty of fair representation on the Union's part. However, Feichtinger's case is distinguished from *Vaca* and *Casey* in a fundamental way. In *Vaca* and *Casey* the unions were the only conduits for bringing grievances against

---

1. "[O]nly the employer is responsible for backpay following a wrongful discharge...." Op. at 415.

the employers. In this case Feichtinger could and did bring his grievance against the Department through arbitration, albeit without assistance from the Union.

In those cases in which the employers have not ·been insulated from collateral attack, the unions have either accepted responsibility for bringing the grievances and have provided inadequate assistance, or the unions have refused to bring the grievances, and the employees were unable to bring grievances without union approval. In each of these scenarios the arbitration was either flawed or did not occur. The employees had no chance to fairly litigate the issues on the merits.

In contrast here, although the Union did not provide counsel for Feichtinger, he was afforded the opportunity to bring the grievance and could have been represented by counsel.

Alaska law provides public employees with a broader scope of rights and remedies than does federal law. *Casey v. City of Fairbanks, supra.* Alaska law recognizes that persons employed in situations other than at will:

> ... have sufficient property interest in continuing their employment, absent just cause for their removal, to require that they be given notice and an opportunity to be heard under the due process clause of the Alaska Constitution.

*Casey* at 1138.

A public employee in Alaska has the option to either take advantage of the grievance procedure provided for in the collective bargaining agreement or to sue in superior court for wrongful discharge. *Id.*

In this case, plaintiffs elected to pursue arbitration and not sue directly in superior court. The general rule is that the arbitrator's decision is binding and has a preclusive effect. *See Borg–Warner Corp. v. Avco,* 850 P.2d 628, 634 (Alaska 1993). This preclusive effect insulates the remaining defendants from further liability.[3] However, Alaska law does not foreclose the opportunity to collaterally establish that a union breached its duty of fair representation. A contrary holding would be inconsistent with Alaska's recognition of a broader scope of employee rights.

[3] Due process, as it applies to this case, does not require that the Union provide an aggrieved employee with an attorney. Nor does it require that the arbitrator reach the correct and just result. Rather, all due process requires, is that the terminated employee be given notice and an opportunity to present his case in front of a neutral third party. Feichtinger was provided these opportunities in the context of the arbitration hearing.

A number of public policy arguments favor denying the Union's Second Motion for Summary Judgment and sustaining summary judgment for the remaining defendants. First, policies of judicial efficiency require enforcement of the doctrines of res judicata and collateral estoppel. To the extent that a litigant is allowed to try his case in multiple tribunals, the court is inviting forum shopping and nuisance litigation. Such a policy would invite an employee that loses at arbitration to file suit, de novo, in superior court alleging a breach of the duty of fair representation. This would destroy the finality of binding arbitration.

It would also discredit the entire arbitration system. Employers would be far less likely to submit issues to arbitration, knowing that the arbitration would simply be an additional expense to what might eventually become a case in superior court.

Placing the financial burden for failure to fairly represent its members fully on the Union will deter unions from refusing to represent their members in potentially meritorious grievance actions. Union administrators will be far less likely to allow prejudice against one of their members to enter into the equation of whether to represent the member, if they know that the union will be held liable for any monetary losses attributable to their refusal to fulfill their duties.

Judge Link's observation that an employee who loses an arbitration will have little reason not to file suit in superior court under a ruling like today's bears elaboration. The employee's suit will include the union as one defendant. The employee will allege that the

union has breached its duty of fair representation and that the breach caused the employee to lose the arbitration. But the employee will also usually name the employer as a defendant. Without the employer, the result of the arbitration as to the employer could not be set aside. Given today's apportionment of damages ruling, the employee cannot be made whole by an award against the union alone, since the union is never required to pay lost wages up to the time that a hypothetical arbitration award should have been made.[2] Since the employee's objective will be full reimbursement for his losses, we can expect him to join the employer as a defendant.

What will the issues in the suit be? First, the employee must prove that the union breached its duty to the employee to fairly represent him. Second, the employee must show that the breach "seriously undermined the arbitral process"[3] meaning, as I understand it, that the breach caused an erroneous arbitration decision.[4] Thus the employer (and the union also) may defend the suit on the basis that discharge of the employee by the employer was justified, for justification would mean that any breach by the union did not cause an erroneous decision.

Judge Link's description of what would happen if a system like the one adopted today were in effect seems apt. The employer, having convinced the arbitrator that the discharge was justified, will quickly find itself in the superior court litigating the identical issue again. As Judge Link observed, not only is the finality of binding arbitration destroyed, but the arbitration system is discredited. Arbitration simply becomes a stepping-stone to the superior court where identical issues are litigated and finally determined, without regard to how they were resolved by the arbitrator.

As noted above, under today's ruling what an employee has to prove in order to set aside an arbitration decision is (1) a breach on the part of the union of its duty of fair representation and (2) that the breach produced an outcome in the arbitration which was different from what would have resulted had there been no breach. This is a deviation from our current case law with respect to the finality of labor arbitration decisions. Under existing law, labor arbitration can only be set aside when an arbitrator has committed "gross negligence, fraud, corruption, gross error or misbehavior" or "when the arbitrator's mistakes are both obvious and significant."[5] The standard reflected in today's opinion—union error affecting the result—considerably broadens existing standards.

The new standard seems unfairly one-sided. If an employer is poorly represented and its representative commits a breach of duty which affects the arbitration result, the arbitration decision nonetheless stands. Why should an employee be treated more favorably than an employer when a similar act or omission is committed by the employee's representative?

Further, arbitration, like court litigation, is an adversary process. A mistake by a party's representative may result in the party losing the case. If so, redress is a matter between the party and his representative. The party has a claim for damages against the representative. And he is entitled to be made whole for the full loss caused by the breach of duty of the representative. The representative's breach is not a ground for setting aside the litigation. Until today, this is the model we have followed.[6] In my view, we should continue to follow it.

2. Op. at 414–15.

3. Op. at 412.

4. Op. at 412.

5. *City of Fairbanks Mun. Util. Sys. v. Lees,* 705 P.2d 457, 459–60 (Alaska 1985). In *Butler v. Dunlap,* 931 P.2d 1036, 1039 (Alaska 1997), we described the judicial review standard applied in labor-management arbitration as "gross error, either factual or legal."

6. *See, e.g., Sauer v. Home Indem. Co.,* 841 P.2d 176, 184 (Alaska 1992) (holding that where the insurance company has an obligation to defend its insured and breaches it, it is liable to the insured for the cost of the judgment); *Bohna v. Hughes, Thorsness, Gantz, Powell & Brundin,* 828 P.2d 745, 754 (Alaska 1992) (noting that if an attorney's malpractice causes a client to incur liability, then the attorney can be liable for that amount); *Continental Ins. Co. v. Bayless & Roberts, Inc.,* 608 P.2d 281, 293 (Alaska 1980) (holding that an insurer who undertakes a defense and

A particularly close analogy exists where employee grievances are decided not by arbitration but by an administrative hearing.[7] In such cases aggrieved employees have the right to counsel. If an employee's attorney—who may be either privately selected or supplied by the employee's union—in an administrative hearing breaches a duty which causes the employee to lose, the decision of the administrative tribunal is not set aside. The employee's remedy is against the attorney and the employee may obtain a full recovery. I see no reason why the result should be different where a similar breach is made in the context of an arbitration.

## IV.

What can be said for today's opinion is that it is consistent with federal labor law. But this case is not governed by federal labor law. One of the strengths of our system of parallel federal and state sovereignties is that the states are, in some areas, free to do things differently than the federal government. Sometimes a state method is better.[8]

In keeping with this aspect of our federal system I do not think it is sufficient justification to say that we will function in a certain way merely because it is the federal way. In this case, I have tried to show that there are good reasons not to duplicate federal law.

Under Alaska law, labor arbitration decisions have been at least as difficult to set aside as administrative adjudications and trial court decisions. Today's decision changes this and holds that in cases where a union is guilty of a breach of duty in representing a union member and the breach affected the arbitration result, the arbitration decision must be set aside. This is needed, according to the majority, because the interests of decisional finality must give way to the interests of union members who have been victimized by their union's breach of duty. If this were

true, one would expect that union members victimized by union breaches of duty in administrative adjudications or in court litigation would also be entitled to have decisions of those forums set aside. But this is not the case, nor should it be. Representational failings in an adversary system can be redressed by an action between the victim and the representative. There is no need to disturb the finality of the decision between the original parties. This is as true in arbitration as it is in administrative adjudication and in court litigation.

Since I believe that we should continue to adhere to Alaska norms of arbitral finality, I dissent.

---

fails to exercise good faith and ordinary care may be held liable for the judgment).

7. *See, e.g., Romulus v. Anchorage Sch. Dist.,* 910 P.2d 610 (Alaska 1996); *Pederson–Szafran v. Baily,* 837 P.2d 124 (Alaska 1992).

8. See for example, *Reeves, Inc. v. Stake,* 447 U.S. 429, 441, 100 S.Ct. 2271, 65 L.Ed.2d 244 (1980), where the United States Supreme Court ex-

pressed reluctance to impose uniformity on the states where that would risk suppression of "effective and creative programs" and quoting Justice Brandeis's classic description of the states as laboratories of social and economic experimentation from *New State Ice Co. v. Liebmann,* 285 U.S. 262, 311, 52 S.Ct. 371, 76 L.Ed. 747 (1932) (Brandeis, J., dissenting).