Jerry COZZEN, Appellant,

v.

**MUNICIPALITY OF ANCHORAGE,**
Appellee.

No. S–6250.

Supreme Court of Alaska.

Dec. 8, 1995.

Martin A. Farrell, Jr., Anchorage, for Appellant.

Douglas A. Carson, Assistant Municipal Attorney, and Ann Waller Resch, Acting Municipal Attorney, Anchorage, for Appellee.

Before MOORE, C.J., and RABINOWITZ, MATTHEWS, COMPTON and EASTAUGH, JJ.

*OPINION*

COMPTON, Justice.

## I.  *INTRODUCTION*

This appeal arises from a grant of summary judgment in a wrongful constructive discharge suit brought by Jerry Cozzen against the Municipality of Anchorage, Anchorage Police Department (APD).  The superior court granted APD's motion for summary judgment, concluding that Cozzen had failed to exhaust his available contractual remedies under the collective bargaining agreement (CBA) by which he was bound.  The court also held that he was estopped from asserting his claim because of an inconsistent position he had taken before the Anchorage Police and Fire Retirement Board (Board).  We affirm the superior court's grant of summary judgment on the ground that Cozzen did not exhaust his available contractual remedies.  In view of this conclusion, we need not address the estoppel issue.

## II.  *FACTS AND PROCEEDINGS*

Cozzen was employed as a police officer by APD from 1979 through October 4, 1989.  He was a member of the Anchorage Police Department Employees Association (APDEA), the APD's collective bargaining unit.  The terms and conditions of APDEA members' employment were specified in successive CBAs between APD and APDEA.[1]

In July 1989, following a comprehensive physical examination, Cozzen met with APD Deputy Chief of Police Duane Udland.  Alan Kraft, the APDEA president, attended this meeting as Cozzen's union representative.  At this meeting Deputy Chief Udland informed Cozzen that the results of his physical examination revealed that his hearing no longer met the standard necessary for employment as a police officer, and that there-fore he would have to retire.  Cozzen alleged that the standard which his hearing did not satisfy was inapplicable to him, because it was the "pre-hire standard."[2]

Cozzen testified that he insisted that he "did not want to leave and that [his] hearing had presented no problem with [his] job performance."  He claims that he "was forced to retire, against [his] persistently stated wish not to."[3]  Both parties agree that Cozzen asked Deputy Chief Udland whether he had any other options.  Deputy Chief Udland answered that he did not.

The parties also agree that Cozzen approached Kraft and inquired whether APDEA could help him.  Cozzen contends that he asked specifically whether APDEA could file a grievance.  However, his deposition does not reveal that he asked specifically for a union-filed grievance.  Cozzen also informally questioned Jack Larson, the former president of APDEA, whether the APDEA could assist him in resisting retirement.  Again Cozzen claims that he asked specifically whether APDEA would grieve his claim.[4]  It is clear that Cozzen wanted APDEA to do whatever could be done to keep him from being forced to retire.  However, when APDEA declined to grieve his retirement, Cozzen never filed a grievance on his own.

In July 1989 Cozzen applied for permanent occupational disability benefits.  In October the Board awarded Cozzen permanent non-occupational disability benefits.  The Board advised Cozzen that he had 15 days within which to appeal this decision.  Cozzen did not appeal.  He retired on October 4, 1989.

In August 1990 the Board contacted Cozzen.  It had been apprised that he was employed in Valdez in a position that required him to carry a firearm.  The Board informed

---

1.  The only agreement appearing in the record is one covering November 1, 1985 through December 31, 1988.  The relevant events of this case take place between July 1989 and October 1989; however, neither party has suggested that the agreement applicable to the case in any way differs from the one appearing in the record.

2.  Cozzen also contends that at trial he could have demonstrated that the APD has no established hearing standard applicable to senior or long-time police officers.  This contention is cen-tral to his primary claim below, which was that APD had applied an inappropriate hearing standard when they forced him to retire.

3.  The pages of the record cited by Cozzen for these two quotations do not contain either the quotations or any support for the allegations.

4.  Again the record citation given to substantiate this claim refers to a document which is unrelated to the claim made.

Cozzen that it was required to review his physical condition, and that if it determined that he was able to perform duties similar to those performed upon retirement, he might be considered recovered, and thus no longer eligible for disability benefits.[5] In September Cozzen's attorney submitted a letter to the Board which stated that Cozzen had recently undergone a hearing test showing that his hearing was "as bad, if not worse, today than it was when he was involuntarily retired."

In August 1991 Cozzen filed the suit from which this appeal arises. Cozzen claimed that he was medically retired without just cause, and thereby was wrongfully forced to retire. He argued that this wrongful termination was a breach of the CBA which caused him to be damaged in excess of $50,000. APD moved for summary judgment, which the superior court granted on two grounds: (1) Cozzen had failed to exhaust contractual remedies available to him under the CBA; and (2) Cozzen was estopped from asserting a position which was inconsistent with the one he had taken before the Board, based upon which he has gained substantial advantage.[6] Cozzen appeals.

## III. *DISCUSSION*

### A. *Standard of Review*

■ "When reviewing a grant of summary judgment, the court must determine whether any genuine issue of material fact exists and whether the moving party is entitled to judgment on the law applicable to the established facts." *Wright v. State*, 824 P.2d 718, 720 (Alaska 1992). We review *de novo* an order granting summary judgment. *Tongass Sport Fishing Ass'n v. State*, 866 P.2d 1314, 1317 n. 7 (Alaska 1994) (quoting *Gilbert v. State*, 803 P.2d 391, 394 (Alaska 1990)).

### B. *Summary Judgment Was Appropriate Because Cozzen Failed to Exhaust His CBA Remedies*

The superior court did not err in granting summary judgment for APD on the ground that Cozzen failed to exhaust the contractual remedies available to him under the CBA governing his employment by APD. Cozzen makes essentially two arguments: (1) it was futile for him to proceed further under the CBA once the APDEA officials had denied him assistance; and (2) he was not required to pursue a grievance on his own under Article 5.2(1) of the CBA, because the language "terminated for cause" applies only to terminations following disciplinary proceedings and not to terminations for medical disabilities. Cozzen is wrong on both grounds.

■ Cozzen may not sue APD because he failed to exhaust his available contractual remedies. This court has consistently held that employees must first exhaust their contractual or administrative remedies, or show that they were excused from doing so, before pursuing a direct action against their employer. *See, e.g., Casey v. City of Fairbanks*, 670 P.2d 1133 (Alaska 1983). Cozzen first argues that once APDEA denied him representation in an APDEA-filed grievance, he had exhausted his remedies under the CBA, and any further efforts would have been futile. He erroneously relies on *Beard v. Baum*, 796 P.2d 1344 (Alaska 1990), and *Casey v. City of Fairbanks*, 670 P.2d 1133 (Alaska 1983). *Beard* and *Casey* hold that where a union refuses to process a grievance, and under the controlling CBA there is no other means by which the employee can enforce the arbitration agreement, the employee may sue his employer directly. *Beard*, 796 P.2d at 1349; *Casey*, 670 P.2d at 1138. *Beard* and *Casey* do not support Cozzen's claim because Article 5.2(*l*) of the APDEA CBA specifically provides alternative means

---

5. If the Board concludes that Cozzen is recovered because he has a job in which he must carry a firearm, the Board is being disingenuous. It has placed Cozzen in a "Catch 22." The reason Cozzen was forced to retire was not because his "disability" prevented him from carrying a gun. Rather, he was compelled to retire because he could not meet a hearing standard. Regardless of whether another employer finds Cozzen capable of carrying a gun or doing police-like work, he will never be able to be an APD officer because he will never be able to meet the hearing requirement imposed by APD.

6. We need not address the estoppel issue because we affirm on the ground that Cozzen failed to exhaust all his available contractual remedies.

of enforcement to employee's denied APDEA representation.[7]

Our reasoning in *Casey* directly contradicts Cozzen's argument. In *Casey*, we held that the relevant working agreement did not permit the plaintiff to unilaterally initiate arbitration proceedings. Since Casey had made a good faith effort to have the union pursue his claim which the union had refused, it followed that the only way to satisfy Casey's due process rights was to allow him to maintain an independent action against his employer. *Casey*, 670 P.2d at 1136, 1138. APDEA's agreement allows employees denied representation to pursue arbitration on their own. Article 5.2(*l*) provided Cozzen with a contractual remedy, not present in the *Casey* or *Beard* cases, which he failed to exhaust.

■ Cozzen's second argument also fails, because his retirement is covered by Article 5.2(*l*). Cozzen asserts that Article 5.2(*l*) does not apply to an employee who is discharged for failure to meet a physical fitness standard. He reasons that the "terminated for cause" language only applies to employees terminated on disciplinary grounds. Cozzen offers three justifications for his argument, two based on the CBA and one based on the use of "for cause" in the context of police conduct.

First, he bases his interpretation of "termination for cause" on what he perceives as an inconsistency between two articles of the collective bargaining agreement. He claims that there is an inconsistency between (1) Article 5.1(a) and (b) which guarantees APDEA representation at each and every step of the Grievance Procedure and (2) Article 5.2(*l*) which requires employees to pursue their own termination grievances once APDEA declines to do so. He concludes that

the only time that APDEA would not be required to represent an employee terminated for cause would be in any proceedings following the final stages of a disciplinary hearing.

Cozzen's first argument is insupportable. We construe his argument as a claim that APDEA had a duty to represent him pursuant to Article 5.1(a) and (b). Whether or not APDEA breached any duty under the agreement to represent Cozzen, Article 5.2(*l*) clearly provides to employees who are denied APDEA representation other contractual remedies which they must pursue before they can sue the employer directly.

Second, Cozzen argues that language in Article 5.2(*l*) conclusively demonstrates that Article 5.2(*l*) applies only to disciplinary proceedings. The section he refers to provides: "The arbitrator shall hear and resolve the grievance as provided under subsections 5.2(f) through 5.2(j) above." He claims that sections 5.2(f) through (j) are disciplinary hearing provisions, and thus, 5.2(*l*) must only apply to disciplinary hearings.

This argument is not meritorious. Sections 5.2(f) through (j) are not disciplinary hearing provisions; these subsections lay out the standards for the submission of disputes to arbitration, the arbitrator's authority over submissions of disputes, the binding effect of the arbitrator's decision, the division of arbitration costs, and the ability of the parties to modify the time limits in the Grievance Procedure.

Third, Cozzen argues that "for cause," when it is used to explain a police officer's termination, connotes termination for some misconduct or poor moral character. He bases this argument on the definition of "for cause" found in 13 AAC 85.900(6). 13 Alaska

---

7. Article 5.2(*l*) of the collective bargaining agreement for November 1, 1985 through December 31, 1988, provides:

A non-probationary employee who has been terminated for cause shall immediately notify the Association if he/she wishes to grieve that action. The Association will then notify the Chief, or his designee, and the employee, in writing, within thirty (30) calendar days of the termination whether they will pursue a grievance. *If the Association declines to pursue the termination grievance and the employee still*

*wishes to do so, he/she will notify the Chief and the Labor Relations Office, in writing, within three (3) working days of receiving notification from the Association. Upon receipt of the employee's request, the Labor Relations Office shall select an arbitrator certified by the American Arbitration Association.* The arbitrator shall hear and resolve the grievance as provided under subsections 5.2(f) through 5.2(j) above.
(Emphasis added.)

Administrative Code 85.900(6) defines "for cause" as "inefficiency, incompetency, dishonesty, misconduct or some other reason that adversely affects the ability and fitness of the officer to perform job duties or that is detrimental to the reputation, integrity, or discipline of the department or agency where the officer works."

 Cozzen offers no authority that would require or dispose this court to apply an Administrative Code definition to interpret the CBA. Neither 13 AAC 85.900(6) nor the CBA provide that the code should be incorporated by reference into the agreement. Even if we were to seek guidance from 13 AAC 85.900(6) in interpreting the CBA, "for cause" under the 13 AAC 85.900(6) definition would cover a termination for medical reasons. Although the definition does focus on discharges for misconduct, the plain language of the code also covers discharges for "some other reason that adversely affects the ability and fitness of the officer to perform job duties...." 13 AAC 85.900(6). This court has rejected a mechanical application of the plain meaning rule as an exclusionary rule in interpreting enacted laws. *See State v. Alex*, 646 P.2d 203, 208 (Alaska 1982). We apply a sliding scale in determining the meaning of statutes, under which "the plainer the language, the more convincing contrary legislative history must be." *Id.* at 209 n. 4 (quoting *United States v. United States Steel Corp.*, 482 F.2d 439, 444 (7th Cir.), *cert. denied*, 414 U.S. 909, 94 S.Ct. 229, 38 L.Ed.2d 147 (1973)). Cozzen has presented no legislative history which supports his interpretation that "some other reason that adversely affects the ability and fitness of the officer to perform job duties" should be limited to moral or disciplinary reasons, rather than "some other reason." Thus, there is no reason to limit this language to moral unfitness.

## IV. CONCLUSION

The superior court correctly concluded that Cozzen did not exhaust his available contractual remedies when he failed to file a grievance after APDEA declined to pursue the grievance for him. The CBA provided a means by which employees could unilaterally pursue grievances against APD. Exhaustion of this remedy was required before Cozzen could directly sue APD. The judgment of the superior court is AFFIRMED.