LEISNOI, INC., Appellant,

v.

Omar STRATMAN, Appellee.

No. S–8005.

Supreme Court of Alaska.

April 10, 1998.

Edgar Paul Boyko and John Richard Fitzgerald, Edgar Paul Boyko & Associates, Anchorage, for Appellant.

Jerald M. Reichlin, Fortier & Mikko, P.C., Anchorage, for Appellee.

Before MATTHEWS, C.J., COMPTON, EASTAUGH, FABE and BRYNER, JJ.

FABE, Justice.

## I. INTRODUCTION

This case concerns another dispute between Omar Stratman and Leisnoi, Inc., an Alaska Native Village Corporation, over rights to land near Kalsin Bay. Stratman and Leisnoi negotiated and agreed to the entry of a permanent injunction limiting Stratman's right to come onto Leisnoi's land. Shortly after the trial court entered the permanent injunction, Stratman began to extract gravel from Leisnoi's land pursuant to a quitclaim deed. Based on this conduct, Leisnoi moved for an order to show cause why Stratman was not in contempt for violating the injunction. Stratman argued in response that the injunction was only intended to limit his rights under a grazing lease and in no way

affected his rights as the deeded owner of sand and gravel. The trial court agreed with Stratman and denied Leisnoi's motion. Interpreting the injunction as a contract negotiated by the parties, we are persuaded by the uncontested extrinsic evidence that the parties did not intend for the injunction to affect Stratman's rights under the quitclaim deed. We therefore affirm the trial court's decision.

## II. *FACTS AND PROCEEDINGS*

The history of the contest between the two parties is thoroughly outlined in *Leisnoi, Inc. v. Stratman*, 835 P.2d 1202, 1203–06 (Alaska 1992). For the purposes of this case, a limited history will suffice. Stratman holds grazing leases over approximately 20,000 acres of Leisnoi's lands. Leisnoi owns the surface estate, but Stratman claims title to the sand and gravel beneath the surface based on interests Koniag, Inc. conveyed to him in a quitclaim deed.

In July 1996 Leisnoi filed a complaint asking for an injunction to prohibit Stratman from entering upon its land "for purposes of a guided horseback operation or horse rental operation...." Apparently, Stratman believed that his rights under the grazing lease permitted him to conduct a horseback riding business on the land included in the lease. Leisnoi and Stratman resolved their dispute over the scope of the grazing lease without protracted litigation. In exchange for Leisnoi waiving its claim for attorney's fees and costs under Alaska Civil Rule 82, Stratman consented to the entry of a permanent injunction. The injunction was drafted by Leisnoi, but Stratman made modifications to its language. The Final Judgment granting the injunction, entered on August 7, 1996, was stipulated to by both parties and approved by Superior Court Judge John Reese. In relevant part, the judgment provided that Stratman was prohibited from

> trespassing on or entering upon Leisnoi's land for any purposes other than (i) tending to or rounding up livestock, suppressing fires, or tending to fences pursuant to whatever rights, if any, Omar Stratman has under the Kalsin Bay Grazing Lease; or (ii) making lawful use of public BLM easements of record. Specifically, and without limitation, Mr. Stratman is enjoined from conducting or operating guided horseback tours or a horse rental operation on Leisnoi's land (other than upon public BLM easements of record), and from allowing his customers, wranglers or employees to enter upon Leisnoi's land (other than upon public BLM easements of record) while using horses rented from, owned, operated, or controlled by Omar Stratman ... except for employees entering for grazing purposes.

One month after the entry of the permanent injunction, Stratman began to extract subsurface gravel from Leisnoi's land. Pursuant to Alaska Civil Rule 90(b), Leisnoi moved the trial court for an order requiring Stratman to show cause why he was not in contempt of the August 1996 permanent injunction. Stratman argued in response that the 1996 injunction "was never intended to enjoin Omar Stratman's activities as an owner of the subsurface estate underlying Leisnoi's lands." Instead, Stratman contended, the 1996 injunction resolved only the question of whether his rights under the grazing lease permitted him to run a commercial horseback riding business on Leisnoi's land.

Judge Reese, who had initially issued the injunction, denied Leisnoi's motion for an order to show cause. Agreeing with Stratman's interpretation of the injunction, he ruled that the August 1996 judgment resolved a trespass claim based on Stratman's horseback riding enterprise, and that determining the extent of Stratman's rights under the quitclaim deed would require separate litigation. Judge Reese denied Leisnoi's motion for reconsideration, and Leisnoi appeals.

## III. *DISCUSSION*

### A. *Jurisdiction*

■ Stratman argues that we should decline to exercise our appellate jurisdiction in this case because the denial of an order to show cause is not a final judgment. We disagree. Because the motion for an order to show cause initiated a post-final judgment proceeding, the denial of the motion disposed of the "entire case," thus satisfying the finality requirement. *See City and Borough of*

*Juneau v. Thibodeau,* 595 P.2d 626, 628 (Alaska 1979).

### B. *Interpreting the 1996 Injunction*

 Despite the assortment of issues raised by Leisnoi in its brief, this case poses only one fundamental question: how should the August 1996 injunction be interpreted? Because Stratman consented to the entry of the 1996 injunction and negotiated with Leisnoi about its language, the injunction is a settlement agreement. This court interprets a settlement agreement like a contract, "provided that it meets minimal contractual requirements." *Singh v. State Farm Mut. Auto. Ins. Co.,* 860 P.2d 1193, 1199 (Alaska 1993); *see also Davis v. Dykman,* 938 P.2d 1002, 1006 (Alaska 1997). In this case, Leisnoi's waiver of its claim to Rule 82 attorney's fees and costs in exchange for Stratman's consent to the entry of the injunction constitutes valuable consideration and therefore justifies treating the agreement as a contract. *See Singh,* 860 P.2d at 1199.

 In determining a contract's meaning, we consider its language as well as relevant extrinsic evidence, including the subsequent conduct of the parties. *See Municipality of Anchorage v. Gentile,* 922 P.2d 248, 256 (Alaska 1996). We may consult extrinsic evidence without first finding that the contract's language is ambiguous. *Id.* at 256 n. 5. Where, as in this case, there is no conflict in the extrinsic evidence, the interpretation of the contract is a question of law. *See Little Susitna Constr. Co., Inc. v. Soil Processing, Inc.,* 944 P.2d 20, 23 (Alaska 1997).[1]

 The extrinsic evidence in this case unquestionably establishes that the 1996 injunction was intended only to prohibit Stratman from conducting a horseback riding business on Leisnoi's land. In its complaint, Leisnoi sought to enjoin Stratman from entering upon its land "for purposes of a guided horseback operation or horse rental operation...." Recognizing that Stratman could legitimately come onto its land in some circumstances, Leisnoi stated that "[e]xcluded

from the scope of the requested injunction are public easement trails marked by the Bureau of Land Management, and uses of land for grazing purposes ... under the so-called Kalsin Bay Grazing Lease." The language of the complaint demonstrates that Leisnoi was concerned with ending Stratman's horseback riding business; nothing in the complaint suggests that Leisnoi was also seeking adjudication of any rights that Stratman may have under the quitclaim deed for sand and gravel from Koniag, Inc.

Additionally, prior to filing the motion for an order to show cause, Leisnoi filed a separate lawsuit, requesting an injunction to prohibit Stratman from extracting gravel until a series of conditions were met. This course of action is inconsistent with Leisnoi's position that the 1996 injunction already prohibited Stratman from coming onto its land to extract gravel. If Leisnoi reasonably believed that the prior injunction proscribed Stratman's actions, it is difficult to understand why it initially filed a complaint for a new injunction specifically forbidding gravel extraction. The chronology of Leisnoi's legal actions suggests that its reliance on the 1996 injunction to stop the gravel extraction was an afterthought.

Leisnoi has failed to point to any extrinsic evidence supporting its interpretation of the agreement. Instead, Leisnoi encourages us to rely solely on the language of the injunction. As we stated above, however, extrinsic evidence is important in understanding the parties' intentions. Leisnoi's inability to provide extrinsic evidence to support its view of the injunction's purpose undermines the viability of its suggested interpretation.

Given the lack of conflict in the extrinsic evidence, we find that the language of the injunction is insufficiently clear to tip the balance in favor of Leisnoi's interpretation. We note at least one aspect of the injunction's language that detracts from its clarity. Prior to the injunction's entry, Stratman claimed two sources of interests in Leisnoi's land: the grazing lease and the quitclaim deed to sand and gravel. Leisnoi argues

---

1. Although the trial court did not explicitly follow the rules of contract interpretation in analyzing the injunction, we conclude that a remand is unnecessary because we are in as good a position as the trial court to interpret the injunction's meaning as a matter of law.

that the 1996 injunction defined and limited Stratman's rights to Leisnoi's land under both the lease and the quitclaim deed. However, although the injunction specifically discusses Stratman's rights as a leaseholder, stating that he can round up livestock, suppress fires and tend fences on Leisnoi's land pursuant to the lease, the injunction does not acknowledge the existence of the quitclaim deed. The absence of a reference to the quitclaim deed, in contrast to the presence of specific language in the injunction discussing Stratman's rights under the lease, persuades us that the parties intended the injunction to limit only Stratman's rights as a leaseholder.[2]

IV. *CONCLUSION*

Consideration of the extrinsic evidence, coupled with the language of the injunction, leads us to conclude that the 1996 injunction was intended to resolve only Stratman's rights under the grazing lease and not his subsurface rights pursuant to the quitclaim deed. Therefore, Stratman was not in contempt of the injunction when he extracted gravel from Leisnoi's lands. The trial court's denial of Leisnoi's motion for an order to show cause is AFFIRMED.

**2.** We note that the trial court reached the same substantive conclusion as we do when it held that the injunction did not prohibit Stratman from extracting gravel because "[t]he Final Judg- ment of August 7, 1996 resolved the grazing and horseback trespass claims raised in the complaint."