Carroll GRANT, Appellant,

v.

ANCHORAGE POLICE DEPARTMENT and the Municipality of Anchorage, a municipal corporation, Duane Udland, Kevin M. O'Leary, and Laren Zager, individually, Appellees.

No. S–8844.

Supreme Court of Alaska.

March 30, 2001.

Cathleen Nelson McLaughlin, Hagans, Ahearn, McLaughlin & Webb, Anchorage, for Appellant.

S. Lynn Erwin, Assistant Municipal Attorney, and Mary K. Hughes, Municipal Attorney, Anchorage, for Appellees.

Before MATTHEWS, Chief Justice, EASTAUGH, FABE, BRYNER, and CARPENETI, Justices.

### OPINION

CARPENETI, Justice.

## I. INTRODUCTION

Carroll Grant was terminated from the Anchorage Police Department (APD) because physical deterioration from an accidentally self-inflicted gunshot wound to his hand prevented him from performing the physical duties of a police officer. Grant did not file a grievance of his termination after his union declined to do so on his behalf. He then applied for and received permanent occupational disability from the Anchorage Police and Fire Retirement Board. Grant later filed a wrongful termination suit against the APD. Although the superior court correctly found that Grant had failed to exhaust his administrative remedies and entered summary judgment on Grant's contract-based claims, it improperly applied collateral estoppel to preclude Grant from pursuing his disability discrimination claim. Therefore, we remand this case for further proceedings on Grant's disability discrimination claim.

## II. FACTS AND PROCEEDINGS

Grant was an APD officer for fourteen years prior to being involuntarily terminated in 1992. Grant served as a senior patrol officer assigned to the crime prevention division. His duties did not routinely require him to respond to calls, drive marked cars, or fire weapons, although he was required to carry handcuffs and a duty weapon, and to be prepared to respond to emergency situations. In January 1987 Grant became impaired as a result of an accidentally self-inflicted gunshot wound that occurred when he was off-duty and holstering his weapon. He returned to work later in January and continued to perform his duties as an officer in the crime prevention unit.

Grant was reassigned to street patrol duties in 1989 under a new department policy that rotated all officers, including senior officers, through assignments to street patrol. Despite the limitations of his left hand, Grant worked in rotations that included street patrol duty for over two years. After several visits to doctors confirmed Grant's complaints of limited strength and dexterity in his hand, he was assigned to light duty in October 1991 as a temporary accommodation to his injury pursuant to the collective bargaining agreement (CBA). Grant worked on temporary light duty assignment for about one year, primarily as a counter clerk in the records division. In March 1992 a doctor again recommended that he remain assigned to light duty because of the limited grip strength and dexterity in his left hand.

In October 1992 Grant received a termination letter that gave him two weeks notice of his termination and recommended that he contact the retirement board for information on medical retirement. Grant requested a disability retirement the same day. As advised by the termination letter, Grant's employment was terminated on November 6, 1992. On November 12 Grant filed a formal application for permanent occupational disability benefits with the retirement board.

In its proceedings to determine whether Grant qualified for occupational disability benefits, the retirement board examined the nature and severity of Grant's injury, whether the injury prevented Grant from performing his duties as a police officer, and the manner in which the injury occurred. In a deposition for the retirement board proceeding, Grant testified that although he was able to perform many ordinary tasks with his left hand—such as picking up a stamp off a flat surface, using a key to open a locked door, picking up a very small object like a miniature screw from a pair of eyeglasses, writing left-handed, or tying his shoes—he was unable to safely execute a forcible arrest because of the limited strength and mobility in his left hand. He testified that he was able to perform other ordinary patrol officer tasks, such as shooting a pistol with his left hand and gripping and using a baton. The retirement board awarded Grant benefits, concluding that he had adequately proved that he was permanently disabled and that his disability was occupational.

Grant was a member of the Anchorage Police Department Employees Association (union). Accordingly, a collective bargaining agreement governed Grant's employment. Under the department's CBA, both the union and Grant had the right to file grievances challenging Grant's termination. After the union declined to file a grievance on Grant's behalf, Grant failed to pursue this remedy individually.

Grant instead filed a complaint against APD in superior court alleging wrongful termination, breach of contract, unlawful discrimination under AS 18.80.220(a)(1), and breach of the covenant of good faith and fair dealing. The superior court granted APD's motion for summary judgment against Grant, finding that he had not exhausted his administrative remedies and that he was collaterally estopped from claiming he was not occupationally disabled. Grant appeals.

## III. STANDARD OF REVIEW

■■■ "We review *de novo* an order granting summary judgment." [1] When reviewing a grant of summary judgment, we are required to determine whether any genuine issue of material fact exists and whether the moving party is entitled to judgment on the law applicable to the established facts.[2]

## IV. DISCUSSION

### A. Grant Was Precluded from Making Contract–Based Claims Because He Failed to Exhaust His Administrative Remedies.

The superior court dismissed Grant's contract claims because he had failed to exhaust his administrative remedies. The trial court also found that Grant had not provided any reasons justifying relief from this requirement.

Grant argues that he should be excused from the exhaustion requirement because his termination was not a "grievable" claim under the CBA, the CBA's requirement that he file an individual grievance within three days of the union's decision not to represent him was unreasonable, and filing a grievance would have been futile.

### 1. Grant's termination claim was grievable.

■■■ Grant argues that the language of the CBA, together with the union's refusal to pursue his grievance, demonstrate that his termination was not grievable.

---

**1.** *Cozzen v. Municipality of Anchorage,* 907 P.2d 473, 475 (Alaska 1995) (citation omitted).

**2.** *See id.* (citation omitted).

Whether Grant had a grievable claim involves the proper interpretation of a contract provision and is therefore a matter of law.[3]

Grant's argument fails because his reading of one CBA provision makes another provision of the CBA a nullity. Grant interprets article 5, subsection 2(A) of the CBA to suggest that if the union declines to pursue an employee's grievance, it is not "grievable," and the grievance guidelines of the CBA do not attach. Article V, subsection 2(A) provides:

> A "grievance" is defined as any dispute between the Employer and an employee or the Association regarding the interpretation or violation of this Agreement which has not been resolved by prior submission of the problem through the chain of command, and which has been accepted as a grievance by the Executive Board of the Association.

Grant contends that the clause "which has been accepted as a grievance by the Executive Board of the Association" means that unless a dispute is certified by the union it is not a "grievance."

While the language of this subsection does suggest Grant's result when read in isolation, article 5, subsection 2(O) of the CBA suggests a different result:

> If the Association declines to pursue a termination grievance of a non-probationary employee and the employee still wishes to grieve the termination, he/she will notify the Chief and the Labor Relations Office, in writing, within three (3) days of receiving notification from the Association that it has declined to pursue the grievance. Upon receipt of the employee's request, the Labor Relations Officer shall select an arbitrator certified by the American Arbitration Association. The arbitrator shall hear and resolve the grievance as provided

under subsections 5.2(I) through 5.2(M) above.

Grant's reading of the last clause of subsection 2(A) renders all of subsection 2(O) a nullity because in every case that the association declined to pursue an employee's termination grievance, it would not be a grievance permissible under the CBA. If this were the case, the terminated employee would always be excused from subsection 2(O)'s notice and arbitration provisions. Instead, the terminated employee would be free to immediately file a lawsuit regarding the termination.

We have held that "[t]o the extent possible, all provisions in a contract should be found meaningful."[4] Since subsection 2(O) would be meaningless under Grant's reading, the superior court correctly read the CBA as a whole[5] to require Grant to file a grievance despite the union's refusal to file a grievance on his behalf. Since this issue is a question of law, the superior court was correct in granting APD summary judgment on this issue.

2. *Grant may not challenge the CBA's three-day grievance filing period for individually-pursued claims because he did not file a grievance.*

■ Grant also argues that the factual issue of when the three-day notice period of article 5, subsection 2(O), ran was not resolved. But Grant never pursued a grievance; instead he filed suit. Therefore, the three-day deadline did not play a role in this case, and Grant may not challenge it because it did not adversely affect his rights.

3. *Because the collective bargaining agreement provided a mechanism for Grant's grievance, futility did not excuse him from filing a grievance.*

■ Finally, Grant argues that attempting a grievance would have been futile. He cites

---

**3.** *See Leisnoi, Inc. v. Stratman,* 956 P.2d 452, 454 (Alaska 1998).

**4.** *Native Village of Eyak v. GC Contractors,* 658 P.2d 756, 760 (Alaska 1983) (citations omitted).

**5.** "[N]ot only should a collective bargaining agreement be read as a whole and in light of the law relating to it when made, the court must in

interpreting it be particularly mindful that it does not lose sight of the broad contextual underpinnings which support the instrument." *Juneau Educ. Ass'n v. City and Borough of Juneau,* 539 P.2d 704, 710 (Alaska 1975) (Erwin, J., concurring) (citing *Mastro Plastics Corp. v. NLRB,* 350 U.S. 270, 279, 76 S.Ct. 349, 100 L.Ed. 309 (1956)).

*Casey v. City of Fairbanks*[6] to support the proposition that the union's refusal to prosecute his grievance excuses his failure to file an individual grievance. However, Grant omits a crucial element of the *Casey* holding: that under the CBA in effect in *Casey*, the plaintiff had no other recourse if the union declined to pursue his grievance.[7] Grant, by contrast, had a CBA that expressly allowed him to file a grievance if his union declined to represent him. Accordingly, the holding of *Casey* does not apply here, and the superior court properly refused to excuse Grant's failure to file a grievance.[8]

4. *Summary judgment was proper because employees whose contracts are governed by a collective bargaining agreement must exhaust contractual remedies prior to filing suit.*

We have "consistently held that employees must first exhaust their contractual or administrative remedies, or show that they were excused from doing so, before pursuing a direct action against their employer."[9] Accordingly, summary judgment was appropriate on Grant's claims because he was not excused from pursuing the available administrative redress.

Our decision in *Cozzen v. Municipality of Anchorage* controls the analysis in this case: the facts are very similar, the relevant language of the CBA is identical, and the procedural history is the same.[10] *Cozzen* involved a wrongful termination suit filed by an APD officer who was terminated because he could no longer meet APD's minimum hearing standards for sworn officers.[11] Interpreting the same language from the predecessor of the CBA governing this case, we affirmed the superior court's grant of summary judgment based on Cozzen's failure to exhaust his contractual remedies.[12]

■ Grant's claims rely on his contractual rights to employment. The CBA provides his rights and remedies. Because he fails to persuasively distinguish *Cozzen*—instead relying on *Beard v. Baum*[13] and *Casey v. City of Fairbanks*,[14] which *Cozzen* specifically distinguishes[15]—he cannot prevail. Accordingly, the superior court correctly granted summary judgment on Grant's contractual claims of breach of contract, wrongful termination, and violation of the covenant of good faith and fair dealing.[16]

B. *The Doctrine of Collateral Estoppel Does Not Bar Grant's Disability Discrimination Claim Under AS 18.80.220(a)(1).*

■ Grant made an additional claim, under AS 18.80.220(a)(1),[17] that APD unlawfully

6. 670 P.2d 1133 (Alaska 1983).

7. *See id.* at 1138.

8. Grant also cites *Beard v. Baum*, 796 P.2d 1344 (Alaska 1990), for the same proposition. *Beard* also involved a CBA that provided no other recourse to the union member when the union declined to pursue a grievance. *See id.* at 1349. Like *Casey*, it is therefore inapposite.

9. *Cozzen*, 907 P.2d at 475.

10. *See id.* at 474–76.

11. *See id.* at 474–75.

12. *See id.* at 475 & n. 6 (noting that it was not necessary to reach the issue of collateral estoppel because Cozzen's failure to exhaust available contractual remedies was dispositive).

13. 796 P.2d 1344 (Alaska 1990).

14. 670 P.2d 1133 (Alaska 1983).

15. *See Cozzen*, 907 P.2d at 476 ("Article 5.2(*l*) [which is now 5.2(O)] provided Cozzen with a contractual remedy, not present in the *Casey* or *Beard* cases, which he failed to exhaust.").

16. Violation of the implied covenant of good faith and fair dealing is a breach of contract claim. *See Knight v. American Guard & Alert, Inc.*, 714 P.2d 788, 791–92 (Alaska 1986) (holding that breach of the implied covenant of good faith and fair dealing expresses an enforceable breach of contract theory). As with other contractual claims under a CBA, a good faith and fair dealing claim must be pursued by grievance.

17. Alaska Statute 18.80.220(a)(1) provides:

Except as provided in (c) of this section, it is unlawful for
(1) an employer to refuse employment to a person, or to bar a person from employment, or to discriminate against a person in compensation or in a term, condition, or privilege of employment because of the person's ... age, physical or mental disability ... when the reasonable demands of the position do not require

discriminated against him based on his disability. The superior court dismissed this claim on the grounds of collateral estoppel, ruling that Grant's assertion before the retirement board that he was occupationally disabled precluded him from claiming that he "can perform the duties of a sworn police officer." The trial court ruled that Grant could not show he was qualified to be a police officer as required by subsection .220(a)(1) and therefore he could not make out a *prima facie* case of disability discrimination. Grant now argues that the superior court erred in granting summary judgment on his discrimination claim because it improperly applied the doctrine of collateral estoppel.

▇ We hold that the doctrine of collateral estoppel does not bar Grant's disability discrimination claim under AS 18.80.220(a)(1). While at first blush it might appear that an employee who successfully argues that he is entitled to a disability retirement is estopped from later contending that he was able to perform the job's requirements and was discriminated against in his termination, a close examination of the doctrine of collateral estoppel shows why it does not apply. Collateral estoppel requires an identity of issues between the two proceedings.[18] In this case, the issues were not identical.

To obtain disability retirement under AMC 03.85.120(A), Grant was required to establish that his injury prevented him from performing his assigned duties, which included arrests. APD insisted on assigning Grant to patrol work, which required him to make arrests. It terminated him because he was physically incapable of performing this assigned duty. In seeking retirement, Grant acknowledged (indeed, proved) that he could not make an arrest and conceded that this was an assigned duty. But he did not concede that he could not perform his job if APD made reasonable accommodations for his disability. We have previously held that "AS 18.80.220 imposes a duty on an employer to reasonably accommodate a disabled employee."[19] Since the board only determined that arrests were assigned duties and did not need to consider whether Grant could perform his job if reasonable accommodations were made, that issue remained open for litigation.

A recent decision of the United States Supreme Court, *Cleveland v. Policy Management Systems Corporation,*[20] is particularly instructive on this point. In *Cleveland,* the Court considered the argument of an employee that her claim of discrimination under the Americans with Disabilities Act (ADA) should not be dismissed due to concessions that she had made in order to collect Social Security Disability Insurance (SSDI) benefits.[21] A lower court had dismissed Cleveland's discrimination claim holding that her claim that she was "unable to do [her] previous work" and "cannot ... engage in any other kind of substantial gainful work which exists in the national economy,"[22] as required to obtain SSDI benefits, estopped her from showing that she was a qualified person with a disability "who, with or without reasonable accommodation, can perform the essential functions of the employment position"[23] in order to qualify under the ADA.[24]

The Supreme Court disagreed. The Court recognized that "an ADA suit claiming that the plaintiff can perform her job *with* reasonable accommodation may well prove consistent with an SSDI claim that the plaintiff could not perform her own job (or other jobs) *without* it."[25] The Court ruled that it was therefore improper for the lower court to

---

distinction on the basis of age, physical or mental disability....

**18.** *See State, Child Support Enforcement Div. v. Bromley,* 987 P.2d 183, 192 (Alaska 1999) (quoting *Jackinsky v. Jackinsky,* 894 P.2d 650, 654 (Alaska 1995)).

**19.** *Moody–Herrera v. State, Dep't of Natural Resources,* 967 P.2d 79, 87 (Alaska 1998).

**20.** 526 U.S. 795, 119 S.Ct. 1597, 143 L.Ed.2d 966 (1999).

**21.** *Id.* at 807, 119 S.Ct. 1597.

**22.** 42 U.S.C. § 423(d)(2)(A).

**23.** 42 U.S.C. § 12111(8).

**24.** *See Cleveland,* 526 U.S. at 799, 119 S.Ct. 1597.

**25.** *Id.* at 803, 119 S.Ct. 1597.

preclude the argument of discrimination or even to apply a "special negative presumption."[26]

However, the Court did note one limitation on this finding. The Court ruled that the "ADA plaintiff cannot simply ignore the apparent contradiction that arises out of the earlier ... disability claim. Rather, she must proffer a sufficient explanation [in order to survive summary judgment]."[27]

■ Grant's case is very similar. In order to obtain occupational disability benefits under AMC 03.85.120(A), he was required to show that his injury prevented him from performing his assigned duties. The superior court ruled that this showing precluded his argument that he was discriminated against under AS 18.80.220, which prohibits discrimination on the basis of "physical or mental disability."[28] This ruling overlooked our holding in *Moody–Herrera* that "AS 18.80.220 imposes a duty on an employer to reasonably accommodate a disabled employee."[29] Whether Grant can perform his duties with reasonable accommodation for his disability remains an open question. As the Supreme Court noted in *Cleveland*, a claim that an employee can perform her job with accommodation may be consistent with the claim that she cannot perform her job without accommodations. Collateral estoppel does not bar Grant's discrimination claim.

In addition, Grant does provide a sufficient explanation as to why his presentations to the retirement board do not contradict his claims of discrimination. Grant claims that the board, in finding that he could not perform his assigned duties, did not consider his claims that he could continue to serve in a different position or with some accommodation of his disability.

Accordingly, we remand so that the superior court may consider Grant's claim that he was otherwise able to perform the "reasonable demands of the position"[30] if reasonable accommodations are provided.

## C. The Superior Court Did Not Err in Granting Summary Judgment on Grant's Age Discrimination Claim.

■ Grant's AS 18.80.220(a)(1) age discrimination claim lacks merit because he does not argue that APD discriminates against officers on the basis of age; rather, he argues that APD treats officers of similar age differently based on their seniority and rank. But there is no showing that different treatment based on seniority and rank constitutes discrimination. Grant even concedes that "[i]f a senior officer receives APD's administration's blessing, then they are placed into the detective division where they are not rotated out due to their years of experience." Thus, Grant's argument on this point is contradictory and insufficient to show age discrimination. Moreover, Grant fails to distinguish his age discrimination claim from his disability claim and provides no evidence that age was a factor in his termination. Accordingly, the trial court did not err in granting summary judgment on Grant's age-based AS 18.80.220(a)(1) claim.

## IV. CONCLUSION

Because Grant failed to exhaust his administrative remedies and his age discrimination claim lacks merit, the superior court did not err in granting summary judgment against him. We therefore AFFIRM the judgment below on these claims. However, because it was error to apply the doctrine of collateral estoppel to Grant's disability discrimination claim, we REVERSE the entry of summary judgment and REMAND for further proceedings on that issue.

**26.** *Id.* at 802, 119 S.Ct. 1597.

**27.** *Id.* at 806, 119 S.Ct. 1597.

**28.** AS 18.80.220(a)(1).

**29.** 967 P.2d at 87.

**30.** *See* AS 18.80.220(a)(1).